547 A.2d 1236

**COMMONWEALTH of Pennsylvania**

v.

**Thomas McDERMOTT, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 1, 1987.

Filed Sept. 23, 1988.

Gerald P. Deady, Wilkes-Barre, for appellant.

Joseph Giebus, Assistant District Attorney, Wilkes-Barre, for Com.

Before BECK, KELLY and POPOVICH, JJ.

KELLY, Judge:

Appellant, Thomas McDermott, appeals from judgment of sentence entered following parole revocation, and separately petitions for review of an order revoking and forfeiting bail which had originally been granted pending appeal of the parole revocation. We grant the petition for review, affirm the order revoking and forfeiting bail and affirm judgment of sentence.

## FACTS AND PROCEDURAL HISTORY

On September 17, 1985, appellant pled guilty to a charge of carrying a firearm without a license and was sentenced to 10 to 23 months imprisonment with credit for time served prior to imposition of sentence. On February 15, 1986, appellant was paroled. A condition of his parole was that he conduct himself as a good citizen, abstaining from any wrongdoing, and that his behavior must not be a menace to his family or any individual, or group of individuals. (N.T. 12/17/86 at 13). He did not comply with that condition.

Late in the evening on August 3, 1986 (while appellant was still on parole), appellant gave a ride to two hitchhikers, Mary H.; age 12, and Lisa M., age 13. Appellant drove them to a nearby hotel, administered methamphetamine to both children by hypodermic syringe, and proceeded to have non-forcible sexual intercourse with Mary H.

On August 19, 1986, appellant was arrested and detained for parole violations relating to the above incidents. On September 25, 1986, an initial *Gagnon* I hear-

ing [1] was held which resulted in a determination that probable cause existed to detain appellant as a technical parole violator.[2]

On December 17, 1986, the *Gagnon* II disposition hearing was held. Mary H. and Lisa M. were subpoenaed by the Commonwealth. Although neither asserted her right against self-incrimination, both initially refused to cooperate. Mary H. feigned selective memory loss. Lisa M. merely responded to questions she did not wish to answer with silence. Both were held in contempt of court and remanded to the custody of the deputy sheriff to be taken to juvenile detention. The trial court noted for the record that both had been "flippant" and "arrogant" toward the court. The disposition hearing was then held in recess for one hour and twenty minutes. (N.T. 12/17/86 at 1–11).

The hearing resumed with testimony from three adult witnesses (N.T. 12/17/86 at 12–28). Mary H. was then recalled to the stand. She proceeded to answer the questions previously evaded with assertions of selective memory loss. She testified that appellant administered methamphetamine to her by hypodermic syringe and had non-forcible sexual intercourse with her. (N.T. 12/17/86 at 29–34). Extensive cross-examination was permitted regarding her decision to testify and the testimony itself. (N.T. 12/17/86 at 34–48). Lisa M. was then recalled to the witness stand. She too elected to answer questions previously evaded. She testified that she and Mary H. had gone with appellant to

1. In *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Supreme Court held that due process required a two step process for revocation of probation or parole: first, a probable cause hearing at the time of the initial detention (*Gagnon* I); and later a full determination hearing (*Gagnon* II). *See Commonwealth v. Maye*, 270 Pa.Super. 406, 410 n. 2, 411 A.2d 783, 785 n. 2 (1979).

2. "Technical violation" of parole results from the violation of parole conditions; "criminal violation" of parole is the commission of a crime while on parole. *See Hines v. Pennsylvania Board of Probation and Parole*, 491 Pa. 142, 420 A.2d 381 (1980). Although the violations alleged clearly constitute crimes, the record indicates that parole was revoked for the technical violation of wrongdoing and menacing behavior rather than a specific criminal offense. (N.T. 12/17/86 at 84).

his hotel room and that he had administered methamphetamine to them. She also identified and verified as a truthful account of her present recollection a prior written statement she had given the police. (N.T. 12/17/86 at 50–54). Extensive cross-examination was permitted regarding Lisa's decision to testify and the testimony itself. (N.T. 12/17/86 at 54–69). Appellant testified on his own behalf that he had given Mary H. and Lisa M. a ride on August 3, 1986, but denied every other aspect of their testimony. (N.T. 12/17/86 at 71–84).

The trial court found that appellant had administered methamphetamine to Mary H. and Lisa M. and that he had sexual relations with Mary H. on August 3, 1986. Parole was revoked and appellant was denied credit for time spent at liberty on parole. Appellant thereafter filed a timely appeal of the judgment of sentence entered following parole revocation.

On January 15, 1987, appellant filed a motion for release on bail pending disposition of his appeal from the revocation of parole. The motion alleged that appellant was entitled to bail pursuant to Pa.R.Crim.P. 4010(B)(1). A rule to show cause why appellant should not be released on bail was issued January 26, 1987. On February 10, 1987, following a hearing, appellant was released on $10,000.00 bail.

On June 10, 1987, appellant was arrested and charged with firearms violations. On September 4, 1987, appellant was arrested for a firearms offense, possession of a small amount of methamphetamine, and possession of drug paraphernalia. On September 26, 1987, appellant's bail was revoked by *ex parte* order. A rule to show cause why the revocation order should not be vacated was issued October 25, 1987. Following a hearing on October 26, 1987, the order revoking bail was reaffirmed. On November 6, 1987, appellant filed a petition for review of the order revoking and forfeiting bail.

I.

Under Pennsylvania law, the authority to parole convicted offenders is split between the common pleas

courts and the Pennsylvania Board of Probation and Parole (Parole Board). When an offender is sentenced to a maximum term of imprisonment of less than two years, the common pleas court retains authority to grant and revoke parole; when the maximum term is two years or more, authority to grant and revoke parole is vested in the Parole Board. *See* 61 P.S. §§ 331.17, 331.21, 331.26; *see also* Wile, *Probation and Parole,* 58 Pa.B.A.Q. 119, 121 (1987); Wile, *An Overview of the Parole Revocation Process in Pennsylvania,* 92 Dickinson L.Rev. 1, 2–3 & n. 1 (1987). The common pleas court retains authority over parole matters relating to offenders sentenced to maximum terms of less than two years even when the offender is confined in a state rather than county correctional facility. *See Georgevich v. Court of Common Pleas,* 510 Pa. 285, 285–86, 507 A.2d 812, 813 (1986). However, the common pleas court loses its authority to parole an offender sentenced to a maximum term of less than two years when a subsequent sentence is imposed consecutively to the previous sentence and the new aggregate maximum sentence exceeds two years. *See Gillespie v. Commonwealth Department of Corrections,* 106 Pa.Cmwlth. 500, 527 A.2d 1061 (1987). In fiscal year 1986–87, of the 89,411 offenders on active probation or parole only 19% were supervised by the Parole Board; twice as many parolees were under county supervision as were under supervision of the Parole Board (11.5% to 22.8%). *See* Pennsylvania Board of Probation and Parole, *1987 Annual Report,* at 33 (Feb.1988). The extent of Common Pleas Court parole is thus greater than that of the centralized and more visable Parole Board.

There are significant differences between common pleas court parole and administrative parole. The procedures for seeking parole in the common pleas court are governed by 61 P.S. § 314; applications for administrative parole on the other hand are governed by 61 P.S. § 331.22. *See* Wile, *supra,* 58 Pa.B.A.Q. at 121–22 (outlining the similarities and differences in the procedures). Revocation procedures in the common pleas court are governed by Pa.R.Crim.P. 1409 and local rules, *e.g.* Phila.R.Crim.P. 910; revocation of ad-

ministrative parole is governed by the detailed regulations promulgated by the Parole Board and codified at 37 Pa. Code § 71 *et seq. See,* Wile, *supra,* 58 Pa.B.A.Q. at 129–32 (outlining similarities and differences in revocation proceedings).

■ Appeals from common pleas court parole orders are within the exclusive jurisdiction of the Superior Court, while appeals from administrative parole orders are within the exclusive jurisdiction of the Commonwealth Court. *See* 42 Pa.C.S.A. §§ 742, 763(a)(1); *see also* Wile, *supra,* 58 Pa.B. A.Q. at 138. Attempts to circumvent the Commonwealth Court's exclusive jurisdiction over administrative parole matters via Post Conviction Hearing Act and *habeas corpus* petitions have been rejected. *See Commonwealth v. Fells,* 513 Pa. 18, 518 A.2d 544 (1986) (PCHA petition); *Commonwealth ex rel. Biglow v. Ashe,* 348 Pa. 409, 35 A.2d 340 (1944) (*habeas corpus* petition); *Gillespie v. Commonwealth, Department of Corrections, supra* (*habeas corpus* petition); *see also* Wile, *supra,* 92 Dickinson L.Rev. at 69–70 & nn. 362–66. Because none of the statutory provisions vesting jurisdiction in the Commonwealth Court apply to common pleas parole orders, the Commonwealth Court cannot exercise jurisdiction over such appeals (Pa.Const. Art. V, sec. 4; 42 Pa.C.S.A. § 763); thus, our jurisdiction over appeals from common pleas court parole matters is exclusive.

Though uniformity in the treatment of common pleas court and administrative parole matters might be desirable, the strict dichotomy dictated by the statutory schema enacted in Pennsylvania thwarts efforts to ensure complete uniformity. As noted above, there are material differences between common pleas court and administrative parole procedures; these differences may result in a lack of uniformity between Superior Court and Commonwealth Court decisions in parole matters even where actual conflicts (unrelated to procedural differences) do not exist. Moreover, because certain due process issues arise which are common to both types of proceedings, there is potential for genuine

conflict between the decisions of the Superior Court and the Commonwealth Court. Though each Court is bound to give due consideration to the decisions and reasoning of the other, neither is bound to follow as controlling precedent the decisions of the other. We are confident, however, that our Supreme Court will resolve any genuine conflict which may arise. *See* Pa.R.A.P. 1114, note (2).

We emphasize that this is not a case properly cognizable in the Commonwealth Court which we address as a matter of judicial economy rather than transferring the matter to the Commonwealth Court. *Compare Schultz v. City of Philadelphia,* 314 Pa.Super. 194, 460 A.2d 833 (1983) (though subject matter of the appeal was within the exclusive jurisdiction of the Commonwealth Court, the Superior Court elected to decide the case in the interest of judicial economy rather than transfer the case to the Commonwealth Court, as no objection to jurisdiction was raised); *and Commonwealth v. Lyles,* 304 Pa.Super. 177, 450 A.2d 159 (1982) (an appeal raising issues regarding bills submitted to a Commonwealth agency was transferred from the Superior Court to the Commonwealth Court because of the subject matter involved even though no objection to jurisdiction was raised). This case involves appeals from common pleas court parole orders. If the issues raised by appellant are to be addressed, they must be addressed in this Court. There is neither an original nor an ancillary basis for transfer of this case to the Commonwealth Court. Pa.R.A.P. 751(a), Pa.R.A.P. 752(a). Consequently, while we eschew any encroachment upon the jurisdiction, authority and expertise of the Commonwealth Court, we must nonetheless fully discharge our responsibilities in cases within our jurisdiction regardless of the potential for conflict with the decisions of the Commonwealth Court. We find the following observations of Justice Story apt:

[The Court] cannot pass it by, because it is doubtful. With whatever doubt, with whatever difficulties a case may be attended, it must decide it, when it arises in judgment. It has no more right to decline the exercise of

a jurisdiction which is given, than to usurp that which is not given.

Story, *Commentaries on the United States Constitution,* Bk. III, Ch. XXXVIII, Sect. 1577, at 434 (3rd Ed.1858). This Court is the proper forum for appellant's claims.

## II.

■ Appellant has filed a petition for review of the order revoking bail which had been granted pending disposition of his appeal from parole revocation. Use of this procedure is consistent with the decision of this Court in *Commonwealth v. Colleran,* 323 Pa.Super. 1, 2, 469 A.2d 1130, 1131 (1983).[3] Because the petition for review raises significant issues regarding the right to bail not previously decided by Pennsylvania appellate courts, we grant review. We note that we address appellant's challenge to bail revocation notwithstanding our affirmance of the parole revocation *infra.* We do so because the bail issues raised herein are significant and are likely to recur in future cases in a manner equally likely to evade review if deemed moot because of the disposition of the appeal from the revocation of parole. *Cf. Commonwealth v. Frattarola,* 336 Pa.Super. 411, 485 A.2d 1147 (1984) (appeal not moot when appeal presents important issues capable of repetition yet evading review); *Goldsmith v. Lower Moreland School District,* 75 Pa.Cmwlth. 288, 461 A.2d 1341 (1983) (same).[4] As our

**3.** We note, however, more recent decisions analyzing the scope of the collateral order doctrine suggest that an order granting, denying or revoking bail may be treated as being appealable as of right under the collateral order doctrine. *See Commonwealth v. Bonaparte,* 366 Pa. Super. 182, 184 n. 1, 530 A.2d 1351, 1352 n. 1 (1987) (an order *denying release on bail* pending disposition of PCHA petition is appealable under the collateral order doctrine, citing cases); *accord Martin v. Solem,* 801 F.2d 324, 328–29 (8th Cir.1986) (appeal from order *granting release on bail* pending disposition of a federal *habeas corpus* petition challenging a state revocation of parole was proper under collateral order doctrine, citing cases). As appellant has presented a petition for review rather than filing notice of appeal, we have no occasion to decide whether such an order is in fact appealable as of right under the collateral order doctrine.

**4.** *Accord Martin v. Solem, supra* at n. 4, 801 F.2d at 329 (review of order *granting release on bail* pending disposition of *habeas corpus*

jurisdiction is proper, we proceed to a review of the merits of appellant's contentions.

## III.

██ Appellant contends that the trial court erred in revoking his bail. He argues that pursuant to Pa.R.Crim.P. 4005, he had a right to notice and a hearing prior to revocation, and pursuant to Pa.R.Crim.P. 4010(B)(1) he had the same right to bail pending appeal of parole revocation that he had prior to his conviction of the offense on which he was paroled.[5] He argues further that the hearing on the rule to show cause why the *ex parte* order revoking bail should not be vacated did not cure the procedural defects as the Commonwealth failed to establish a violation of the bail conditions by the preponderance of the evidence. We cannot agree.

## A.

██ Prior to conviction, in a non-capital case in Pennsylvania, an accused has a constitutional right to bail which

petition not moot despite subsequent grant of discharge on the merits, as important issues raised were capable of repetition, yet evading review); *Martin v. State,* 517 P.2d 1389, 1391 (Alaska 1974) (appeals from orders *denying release on bail* pending resolution of parole revocation proceedings not moot despite discharge or revocation as the appeals involved important recurring issues of law capable of evading review); *Liistro v. Robinson,* 170 Conn. 116, 121–22, 365 A.2d 109, 111–12 (1976) (state appeal from grant of habeas corpus *granting release on bail* pending resolution of parole revocation proceedings not moot despite revocation of parole and subsequent re-parole, as appeal raises an issue of law capable of repetition yet evading review). *But see People ex rel. Tucker v. Kotsos,* 68 Ill.2d 88, 93–94, 11 Ill.Dec. 295, 297, 368 N.E.2d 903, 905 (1977) (appeal from *denial of release on bail* pending resolution of parole revocation proceedings moot when parole was formally revoked prior to disposition of that appeal, acknowledging the rigidity of the standard applied).

5. Rule 4010(B)(1) provides, "After Sentencing. (1) When the sentence imposed includes imprisonment of less than two years, the defendant shall have the same right to bail as before verdict." However, it should be noted that the language of this rule is some what hyperbolic. Strictly speaking, it conveys no "right" to the defendant; rather it defines the scope of the trial court's "discretion" to admit the convicted defendant to bail pending appeal. *See Commonwealth v. Fowler,* 451 Pa. 505, 510–515 & nn. 5–8, 304 A.2d 124, 127–29 & nn. 5–8 (1973) (construing similar language in a prior rule).

is conditioned only upon the giving of adequate assurances that he or she will appear for trial. Pa. Const. Art. 1, sec. 14. Absent evidence that the accused will flee, the importance of the presumption of innocence, the principle that punishment should not be imposed prior to conviction, and the need to provide an accused an unhampered opportunity to prepare a defense, dictate that bail should be granted prior to trial. *See Commonwealth v. Truesdale*, 449 Pa. 325, 335–36 & n. 13, 296 A.2d 829, 834–35 & n. 13 (1972).

 Following a verdict of guilt, however, a defendant has no state or federal constitutional right to bail. *See Commonwealth v. Fowler, supra*, 304 A.2d at 127 & n. 6; *Commonwealth v. Caye*, 447 Pa. 213, 290 A.2d 244 (1972); *Commonwealth v. Keller*, 433 Pa. 20, 248 A.2d 855 (1969). After conviction and pending final disposition of all direct appeal proceedings, allowance of bail in non-capital cases is left to the discretion of the trial court. *See Commonwealth v. Keller, supra*, 248 A.2d at 856; *Commonwealth v. Myers*, 137 Pa. 407, 409, 21 A. 245, 247 (1891); *Respublica v. Negro Jacob*, 1 Sm.L. 57 (1799). The provisions of Pa.R.Crim.P. 4010 set forth the procedural rules adopted by our Supreme Court to govern the exercise of this discretion. *See Commonwealth v. Fowler, supra*, 304 A.2d at 127 & n. 6.

 In proceedings under the Post Conviction Hearing Act, 42 Pa.C.S.A. §§ 9541 *et seq.*, the trial court retains limited discretion to release a petitioner on bail pending disposition of the PCHA petition pursuant to the trial court's inherent common law powers in *habeas corpus* proceedings. This discretion, however, is governed by Pa. R.Crim.P. 1506(2) rather than Pa.R.Crim.P. 4010. Under Pa.R.Crim.P. 1506(2), the court's discretion to release the petitioner on bail is limited to exceptional cases when required "in the interest of justice." *See Commonwealth v. Bonaparte, supra* at n. 4, 530 A.2d at 1353–55; *Commonwealth v. Wetzel*, 88 Dauph. 250, 251–52 (Pa.Com.Pl.1967).

■ The foregoing cases demonstrate the fact that an individual's legitimate interest in remaining at large on bail diminishes, and the Commonwealth's legitimate interest in incarcerating the individual increases correspondingly, as the individual passes from suspect, to accused, to appellant, to *allocatur* petitioner, to *certiorari* petitioner, to PCHA petitioner. Accordingly, the availability of release on bail is subject to increased restrictions at each level.

■ Nonetheless, even the PCHA petition, removed as it is from the presumption of innocence, is still directed to the validity of the individual's original conviction and judgment of sentence and the consequent restrictions on the individual's liberty resulting therefrom. Parole revocation proceedings, on the other hand, concede the validity of the original conviction and sentence and address only the import of subsequent collateral events. Thus, appellant's liberty interest during parole revocation proceedings is not merely diminished from that which he held prior to trial; rather, it is of a wholly different nature. In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the United States Supreme Court explained:

> [R]evocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.
>
> \* \* \* \* \* \*
>
> Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.

*Id.* at 480, 92 S.Ct. at 2600, 33 L.Ed.2d at 494. *See also Griffin v. Wisconsin*, 483 U.S. —, —, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709, 718 (1987) (reaffirming the conditional liberty characterization); *Rivenbark v. Commonwealth, Board of Probation and Parole*, 509 Pa. 248, 252, 501 A.2d 1110, 1111 (1985), *citing Morrissey v. Brewer, supra.*

■ In light of the foregoing, we conclude that neither Pa.R.Crim.P. 4005 nor Pa.R.Crim.P. 4010(B)(1) apply to parole revocation proceedings or appeals from parole revoca-

tion. It would be absurd and unreasonable to construe Pa.R.Crim.P. 4010(B)(1) to provide that a convict on parole has the same right to bail in parole revocation proceedings and appeals from parole revocation which he had prior to trial. We decline to so construe those rules. Rather, we agree with the analysis set forth in *Commonwealth v. Bonaparte, supra,* which concluded that Pa.R.Crim.P. 4010 applied only to direct appeals from the original conviction and judgment of sentence, and not to collateral appeals thereafter. 530 A.2d at 1353. We note that the analysis applies equally to Pa.R.Crim.P. 4005.

## B.

The question of whether and under what conditions re- lease on bail may be granted in parole revocation proceedings and appeals from parole revocation has not previously been addressed by Pennsylvania state appellate courts. We are not, however, without guidance.

In *Commonwealth v. Chmiel,* 28 Som. 405 (Pa.Com. Pl.1973), Somerset County President Judge Charles Coffroth analyzed *Morrissey v. Brewer, supra,* and concluded that when a parolee is properly held on a detainer for parole violations the parolee has no right to bail. We agree. We note that the same conclusion has been reached by numerous other jurisdictions. *See e.g. Faheem–El v. Klincar,* 841 F.2d 712 (7th Cir.1988), *reversing* 620 F.Supp. 1308 (N.D.Ill. 1985); *Luther v. Molina,* 627 F.2d 71, 76 n. 10 (7th Cir. 1980); *Galante v. Warden, Metro. Cor. Ctr.,* 573 F.2d 707, 708 (2nd Cir.1977); *Argo v. United States,* 505 F.2d 1374, 1377 (2nd Cir.1974); *In re Whitney,* 421 F.2d 337, 338 (1st Cir.1970); *Siegel v. U.S. Parole Com'n,* 613 F.Supp. 127, 128 (S.D.Fla.1985); *Robin v. Thomas,* 555 F.Supp. 849, 852 (S.D.N.Y.1983); *Lee v. Pennsylvania Board of Probation and Parole,* 467 F.Supp. 1043, 1046–47 (E.D.Pa.1979); *Burgess v. Roth,* 387 F.Supp. 1155, 1162 (E.D.Pa.1975); *Martin v. State, supra; Liistro v. Robinson, supra; Genung v. Nuckolls,* 292 So.2d 587, 588 (Fla.1974) (parole); *Bernhardt v. State,* 288 So.2d 490, 497 (Fla.1974) (probation), *re-*

*affirmed Miller v. Toles,* 442 So.2d 177, 179 (Fla.1983) (probation and parole); *People ex rel. Tucker v. Kotsos, supra; State v. Garcia,* 193 N.J.Super. 334, 337–38, 474 A.2d 20, 21–22 (1984); *People ex rel. Calloway v. Skinner,* 33 N.Y.2d 23, 33–34, 347 N.Y.S.2d 178, 184, 300 N.E.2d 716, 720 (1973).

Although the above jurisdictions agree that a parolee has no *right* to release on bail pending resolution of parole revocation proceedings, they are divided as to whether and under what conditions bail may be granted as a discretionary act by the trial court. Under Alaska law, bail is to be withheld pending formal revocation of probation or parole only in exceptional cases. *Martin v. State, supra,* 517 P.2d at 1398. In the federal courts and in Connecticut, the trial court is deemed to have inherent authority to release a parolee on bail pending resolution of the parole revocation proceedings only in exceptional cases, as when the parolee establishes a high probability of success on a substantial constitutional challenge to the parole detainer itself. *See Galante v. Warden, Metro. Cor. Ctr., supra,* 573 F.2d at 708; *Siegel v. U.S. Parole Com'n, supra,* 613 F.Supp. at 128; *Liistro v. Robinson, supra,* 365 A.2d at 112; *cf. Commonwealth v. Bonaparte, supra,* 530 A.2d at 1354–55 (recognizing similar authority to release a PCHA petitioner on bail pending resolution of PCHA proceedings, in exceptional cases). In New Jersey and New York, the trial court is deemed to lack authority to release on bail a parolee held on detainer pending resolution of parole revocation proceedings because of the absence of express statutory authority to do so. *State v. Garcia, supra,* 474 A.2d at 21–22; *People ex rel. Calloway v. Skinner, supra,* 347 N.Y.S.2d at 84, 300 N.E.2d at 720. In Florida, state statutes have been construed to prohibit the release on bail of a felon parolee whose alleged violation of parole is the commission of a felony, but to permit release on bail, in the trial court's discretion, other alleged parole violators. *See Miller v. Toles, supra,* 442 So.2d at 180. In Illinois, state statutes have been construed to prohibit the courts from releasing on bail a parolee held on a detainer for parole violations

pending resolution of parole revocation proceedings. *People ex rel. Tucker v. Kostos, supra,* 11 Ill.Dec. at 297, 298–99, 368 N.E.2d at 905, 906–08.

■ We need not and do not decide here which of the above approaches applies in Pennsylvania. Appellant seeks release *after* formal revocation of parole rather than pending resolution of parole revocation proceedings. As appellant made no *habeas corpus* type challenge to the parole detainer or parole revocation proceedings presenting exceptional circumstances raising a substantial constitutional challenge upon which a substantial likelihood of success has been demonstrated (*see Siegel, supra; Liistro, supra*), we have no occasion to determine whether authority to release the parolee on bail could be implied in such cases. *Cf. Commonwealth v. Bonaparte, supra.* We find that, in absence of such a *habeas corpus* type claim, there is no authority pursuant to statute or the common law to release a parolee on bail pending appeal of an order revoking parole.

## C.

■ Nonetheless, appellant was released on bail, was subsequently arrested on new criminal charges, and had bail revoked and forfeited by *ex parte* order. We affirm the revocation and forfeiture of bail based upon our conclusion that: 1) though bail was improperly granted, appellant was bound by the bail conditions until bail was revoked; and 2) a bail violation warranting revocation and forfeiture of bail was established by the preponderance of the evidence. Contrary to appellant's protestations, we find that the presence of a firearm on the side of the road, close to appellant, at the scene of an auto accident gave rise to a reasonable inference that appellant more probably than not possessed the firearm. We note that as to revocation of bail, the *ex parte* order could be affirmed based solely upon the fact that appellant was not eligible for such bail in the first place, and so could not have been prejudiced by its

revocation. The order revoking and forfeiting bail is therefore affirmed.

### IV.

In his appeal from parole revocation, appellant contends that: 1) the trial court improperly coerced the juvenile victims into testifying against appellant and thereby violated his right to due process; 2) with the child victim's testimony excluded, the evidence is insufficient to sustain the parole revocation; and 3) even if the revocation was supported by sufficient evidence, it was contrary to the weight of the evidence. We find no merit in the contentions.

### A.

Appellant first contends that the trial court violated appellant's due process rights by using its contempt powers to coerce the juvenile victims into testifying against appellee. This issue was waived by appellant's failure to object to the witnesses' testimony in the trial court. *See Commonwealth v. Wallace*, 368 Pa.Super. 255, 259–62, 533 A.2d 1051, 1053–54 (1987) (citing waiver cases).

Alternatively, we find no due process violation. A flat refusal to testify in absence of a valid privilege is plainly contempt. *In re Grand Jury of Chester County (Petition of Lees)*, 518 Pa. 485, 488–489, 544 A.2d 924, 925 (1988), *citing In re Martorano*, 464 Pa. 66, 346 A.2d 22 (1975). Lisa M., therefore, was properly held in contempt. In *In re Grand Jury of Chester County (Petition of Lees)*, *supra*, however, our Supreme Court held that a witness could not be held in contempt based solely upon an incredible claim of memory loss, as the question put to the witness had been answered and therefore, even if the memory loss was feigned, only perjury sanctions were then applicable. Here, the feigned memory loss was combined with other contemptuous behavior, which distinguishes this case from *In re Grand Jury of Chester County (Petition of Lees)*, *supra*. The trial court noted and the record confirms that

both the juvenile witnesses were flippant and arrogant and conducted themselves in an immature and contemptuous manner. Hence, we find no abuse of discretion with respect to the trial court's decision to hold the witnesses in contempt.

We do not find *Commonwealth v. Laws,* 474 Pa. 318, 378 A.2d 812 (1977) (plurality), cited by appellant, to be apposite. The instant matter was not a jury trial where the trial court improperly usurped the fact-finding function of the jury by clearly expressing disbelief of a witness' testimony in front of the jury; nor was this a case where a witness was coerced into changing his testimony by repeated threats of perjury charges and requests by the trial judge that the witness reconsider his testimony. Rather, two arrogant juvenile witnesses were held in contempt for a brief period of time in order to impress upon them the fact that they could not elect which questions to answer flippantly and which to evade by silence or feigned selective memory lapse without risking punishment for their contempt of court. The coercive force of the contempt sanctions was directed toward that aspect of the witnesses' conduct and not the content of their prior testimony. Hence, *In re Grand Jury of Chester County (Petition of Lees), supra,* and *Commonwealth v. Laws, supra,* are distinguishable in material respects.

Though we find no coercion to have been exercised with regard to the content of the witnesses' testimony, we are of the opinion that appellant's assertion of possible coercion, like an assertion of interest or bias, goes to the weight rather than the admissibility of the post-contempt testimony. Appellant was permitted full and unbridled cross-examination as to the witnesses' decision to testify and as to witnesses' post-contempt testimony itself; consequently, we find no violation of appellant's due process rights implicated. *Cf. McIntyre v. State,* 460 N.E.2d 162, 165–67 (Ind.App.1984) (though the trial court properly held juvenile witness in contempt for refusing to testify despite the absence of any privilege, the trial court erred in

precluding cross-examination regarding the contempt sanction as the motivation to testify following the witness' decision to testify). We find no authority for the proposition that appellant had a due process interest in the continued unlawful refusal of the witnesses to testify.[6]

### B.

■ Appellant next contends that with the testimony of the juvenile victims excluded, the evidence is insufficient to sustain the parole revocation. The flaw in this contention is that it presumes the merit of the prior contention; as we found no merit in the prior contention we find no merit in this contention. Moreover, we note that even with post-contempt testimony excluded, Mary H.'s pre-contempt testimony, that appellant engaged in sexual activity with her and that she used drugs with appellant, would have been sufficient, standing alone, to warrant revocation of parole for wrongdoing and menacing behavior. (N.T. 12/17/86 at 7–8).

### C.

Appellant's final contention is that the revocation of parole is contrary to the weight of the evidence. He requests that the case be remanded for new parole revocation proceedings.

■ We find no authority for appellant's assumption that a challenge to the weight of the evidence may properly be entertained on appeal from parole revocation by the trial court. It is clear that such a challenge is not available from parole revocations entered by the Pennsylvania Board of Probation and Parole. *See James v. Commonwealth, Board of Probation and Parole,* 109 Pa.Cmwlth. 268, 270,

---

6. We note that the United States Supreme Court has recently held that a prior statement of a witness may be admitted as substantive evidence against a defendant even though the witness claims memory loss as to the basis for the statement at trial, so long as the witness is made available for cross-examination regarding the statement and the alleged memory loss. *United States v. Owens,* — U.S. —, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988).

530 A.2d 1051, 1052 (1987); *Gregory v. Commonwealth, Board of Probation and Parole*, 109 Pa.Cmwlth. 294, 295–99, 530 A.2d 1048, 1049–50 (1987). Moreover, regardless of whether such challenges may be raised from common pleas court parole revocations, we do not find that the alleged conflicts in the juvenile witnesses' testimony render the finding of technical parole violations contrary to the weight of the evidence. *See Commonwealth v. Pearsall*, 368 Pa.Super. 327, 329–30, 534 A.2d 106, 108 (1987). Rather, the conflicts raised issues of credibility which were for the finder of fact to resolve. *Commonwealth v. Smith*, 490 Pa. 329, 334, 416 A.2d 494, 496 (1980). We find no abuse of discretion in this respect.

## CONCLUSION

Based upon the foregoing, the order revoking and forfeiting bail and the judgment of sentence imposed following parole revocation are affirmed.

BECK, J. concurs in the result.

POPOVICH, J. files a concurring opinion.

POPOVICH, Judge, concurring:

Albeit I concur in the result reached by the Majority, I would prefer that the adjudication (resolution) of the matter at hand be reserved to the expertise of the Commonwealth Court. See, e.g., 61 P.S. § 331.17.

We serve neither the ends of justice nor the preservation of the exclusivity reserved to the Commonwealth Court by our Legislature in reviewing issues best left to such a tribunal. By doing otherwise, we expose the appellate process to potentially divergent views emanating from the two intermediate appellate courts—Superior and Commonwealth Courts.

All cases should not be resolved in the name of "expeditious" justice, for in its wake we render the appellate process vulnerable as a patchwork of decision making that,

although rendering decisions, does little to preserve the authoritative scope of each tribunal.

In our zeal to decide cases, we should be cautious to assure ourselves of their origin and our source of jurisdiction to decide each. Better to eschew review of a case, and defer deciding the same by transferring the case to the appropriate tribunal, then deciding the dispute in the name of judicious dispute-resolution.

From the tenor of my concurrence, it is obvious that I disdain the expansion of the Superior Court's jurisdiction, unnecessarily, when to do so is by judicial fiat vis-a-vis statutory guidelines which light our way as to what is jurisdictionally acceptable and what is not. I pray that we do not lose sight of this in an endeavor to decide cases.

Further, I concur in the Majority's determination that the court below exercised appropriate discretion in denying the appellant his release on bail pending the resolution of his appeal. However, I do not find it appropriate at this time to itemize under what circumstances, if any, a parolee violator should be allowed his freedom (by means of bail) pending the resolution of an alleged parole violation and subsequent withdrawal of parole and an appeal therefrom.

I do not foreclose the existence of "exceptional circumstances" which would warrant the awarding of one's release on bail pending his pursuit of the appellate process to vindicate himself/herself, provided, of course, the interests of justice would so require. See *Commonwealth v. Bonaparte,* 366 Pa.Super. 182, 530 A.2d 1351 (1987). The facts at bar do not exhibit any such "exceptional circumstances", thus, I concur in the Majority's determination to affirm the actions of the court below.